UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| COVENANT AVIATION SECURITY LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 13-CV-4371 |
| | ) | Judge Lefkow |
| GERALD L. BERRY, | ) ) ) | |
| Defendant. | ) ) ) | |

## **DEFENDANT BERRY'S MOTION TO DISMISS**

Defendant Gerald Berry ("Berry") moves this Court to dismiss Plaintiff Covenant Aviation Security LLC's Complaint pursuant to Fed. R. Civ. P. 12(b)(6).

## **Introduction**

Covenant's three-count complaint is predicated upon its purported right to maintain the confidentiality of secret information. The complaint, however, fails to identify any information that Berry allegedly disclosed. To the contrary, all Covenant is able to muster is that Berry had "access" to broad areas of information while employed at the company (*e.g.*, profit and loss information, operational information, cost information). But that is not the issue; no doubt Berry had access to such information over his ten years of employment. The issue is whether Berry *disclosed* information to others and whether the information was protected under the Illinois Trade Secret Act or a confidentiality agreement. To this point, Covenant failed to allege the disclosure of a single piece of information, and for this reason, the complaint should be dismissed. In addition, Count III should also be dismissed because it is preempted by the Illinois Trade Secret Act.

1

**Summary of Complaint Allegations**[1]

Defendant Berry is a 68-year-old Vietnam veteran who served in the United States Marine Corps for 25 years. He and his wife have resided in Winter Springs for the past twenty years.

For over a decade, Berry served as President of Covenant Aviation, which is in the business of providing airport security services, such as passenger and baggage screening, to airports throughout the country. (Ex. 1, Cmplt. ¶2, 3, 7.) Berry served as President of the company without incident or complaint and none of the allegations in the Complaint relate to his actions during his tenure as President. In fact, during his leadership the company successfully won the contract bids for the San Francisco airport, which is to this day, Covenant's largest client with an estimated annual value of $95 million. (*Id.* ¶11-12.)

Berry retired from Covenant in or about July 2012. (*Id.* ¶18.) At the time of his retirement the company made no allegation of wrongdoing against Berry, instead provided him severance pay (Cmplt. Ex. 1, ¶4.e.), and requested that he stay on with the company as a consultant for a period of one year. (Cmplt. Ex. 4, Consulting Agreement.) Berry and Covenant entered into a consulting agreement effective July 1, 2012. (Cmplt. Ex. 4, ¶6.)

While not determinative of this motion, Covenant fraudulently induced Berry to enter into the consulting agreement with no intent of honoring it. To that end, Covenant misrepresented that the agreement would be for a term of one year, while knowingly all along it would only keep Berry for a few months in order to transition the

---

[1] The "Summary of Complaint Allegations" is not an admission of the facts or allegations and are instead an acknowledgement to the legal standard applied to a motion to dismiss.

2

business to others. Indeed, prior to executing the consulting agreement Covenant executives admitted that Berry was the company's "most important resource" for achieving its business goals, and that by getting rid of Berry as President, but keeping him on as a consultant for "60-90 days," it could have its "cake and eat it too."

Three months and ten days after the effective date of the consulting agreement, Covenant terminated the agreement under the pretext that Berry – despite his outstanding performance over the past ten years – was suddenly failing in his role by "not making reasonable progress towards meeting specific goals." (Cmplt. Ex. 5.) None of those goals were identified in the termination letter. (*Id.*) Covenant also alleges that it believed that Berry intended to one day compete against it based on the fact that Berry created a limited liability company. (Cmplt. ¶20.) Covenant, however, does not allege that the limited liability company has ever conducted business, was in the same business as Covenant, or that that it competed against Covenant in any manner.

Covenant filed its three-count complaint on June 13, 2013 bringing claims for breach of contract (Count I), misappropriation of trade secrets (Count II), and breach of fiduciary duty (Count III). Covenant's theory of the case is that Berry is liable under each count because he has disclosed confidential or trade secret information to third parties. (*See* Count I at ¶30 (claiming Berry breached the contract by "providing and offering to provide Covenant's confidential and proprietary information to competitors…"); Count II at ¶28 (claim under Illinois Trade Secret Act); and Count III at ¶27 (claiming "Berry was under a fiduciary duty not to use information acquired during the relationship…").

Fatal to its claims, however, is Covenant's failure to at all identify what it is Berry allegedly disclosed. The absence of such an allegation is deafening in this case. Absent

3

such allegation, what Covenant has alleged is the mere speculation of misconduct alone, which as we discuss below, is insufficient as a matter of law.

## Contract Provisions

Berry is alleged to have entered into four agreements with Covenant: (Cmplt. Ex. 1) Executive Employment Agreement, (Cmplt. Ex. 2), Confidentiality And Restrictive Covenant Policies, (Cmplt. Ex. 3) Restrictive Covenants Policy, and (Cmplt. Ex. 4) Consulting Agreement. The Confidentiality and Restrictive Covenant Policies was incorporated into both the Employment Contract and the Consulting Agreement and provides as follows with respect to confidential information and non-solicitation:

> **2. Non-disclosure**. [Berry] shall not, without the prior written consent of an officer or director of the Company, during [Berry's] engagement by the Company or thereafter, except to the extent required by law or court order or by the performance by [Berry] of his or her duties for the Company
>
> > **2.1** use any Confidential Information for the benefit of Fiduciary or any other persons other than the Company, or
> >
> > **2.2** disclose any Confidential Information to any such other person.
>
> **5. Non-Solicitation and Non-Competition**. During [Berry's] engagement with the Company, and for one (1) year after the date on which [Berry's] engagement terminates ... [Berry] shall
>
> > **5.1** not entice or induce ... any employee or agent of the Company to leave such employment or engagement with the Company;
> >
> > **5.2** before accepting other engagement or entering into a business relationship with any Competitive Business[2] ... cause written notice of the terms of these Policies ... to be delivered to such Successor Employer ... and provide to the Company written acknowledgment from such Successor Employer of its receipt of such notice;

---

[2] The term "competitive business" is defined in ¶6.1 as an entity "engaged in security or related services or other services that are competitive with those provided by the Company."

4

**5.3**  not request, encourage or cause any existing Client of the Company to withdraw, curtail or cancel a business relationship with the Company;

**5.4**  not solicit any potential Client for business if the potential Client was the subject of [Berry's] sales or marketing activity directed toward the potential Client within twelve (12) months before termination of [Berry's] engagement with the Company.

### **Rule 12(b)(6) Standard.**

Allegations of a complaint that reflect no more than the "mere possibility" of a defendant's liability are no longer sufficient to state a claim under Fed. R. Civ. Pro. 8(a). *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). To survive a motion to dismiss, a complaint must instead allege facts which, accepted as true, "state a claim to relief that is plausible on its face." *Iqbal*, 129 S. Ct. at 1949.  "[A] complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)." *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 792 (7th Cir. 1996) (quote marks and citation omitted). Accordingly, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability," it cannot survive a motion to dismiss. *Iqbal*, 129 S. Ct. at 1949-50 (complaint pleading facts merely consistent with liability "stops short of the line between possibility and plausibility of entitlement to relief."); *see also Twombly*, 550 U.S. at 567-70 (antitrust complaint dismissed where allegations were as equally compatible with lawful market behavior as they were with unlawful behavior.)

Courts may apply a two-pronged approach to determine whether a complaint states a plausible claim for relief. First, the court should "identify pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."

*Iqbal,* 129 S.Ct. at 1950. Second, the court must examine the factual allegations and, assuming their veracity, "determine whether they plausibly give rise to an entitlement to relief." *Id.* Absent factual allegations that allow the court, relying on "its judicial experience and common sense," to infer "more than the mere possibility of misconduct," a complaint must be dismissed. *Iqbal*, 129 S. Ct. at 1950.

<u>**Argument**</u>

**I.     Count I-III Should Be Dismissed Because Plaintiff Has Not Identified Any "Confidential" or "Trade Secret" Information And Has Not Alleged Berry Disclosed Any Such Information.**

Covenant's claims are each premised on its ability to prove that Berry disclosed confidential or trade secret information in violation the Illinois Trade Secrets Act, his contractual duties, or his fiduciary duties. Its complaint fails on all accounts.

In order to plead a claim under the Illinois Trade Secret Act, a plaintiff must establish the information was secret, it was misappropriated, and that it was used in the appropriator's business. *Composite Marine Propellers Inc. v. Van Der Woud*, 962 F.2d 1263, 1266 (7th Cir. 1992). Likewise, Covenant's counts for breach of contract and breach of fiduciary duty are also predicated on the disclosure of confidential information. (*See* Count I at ¶30, Count III at ¶27.) The Seventh Circuit requires specificity when defining trade secrets and the like, cautioning that "[i]t is not enough to point to broad areas of technology and assert that something must have been secret and misappropriated." *Composite Marine Propellers Inc. v. Van Der Woud*, 962 F.2d 1263 (7th Cir. 1992) (reversing judgment on trade secret claim). District Courts are in accord and dismiss claims that rely on generalizations regarding the information that is at issue. *See e.g., Carpenter v. Aspen Search Advisors LLC*, 2011 WL 1297733 at *3 (N.D. Ill. April 5, 2011) (dismissing trade secret claim under Rule 12(b)(6)) where party

6

alleged their "business and marketing plans" and "billing and information systems" were trade secrets); *Thermal Zone Products Corp. v. Echo Engineering Ltd.*, 1993 WL 358148 at *5 (N.D. Ill. Sept. 14, 1993) (dismissing claim on motion to dismiss where plaintiff alleged that the "design, plans, details and specifications" of its goods were trade secrets); *Lear Siegler, Inc. v. Glass Plastics Corp.*, 1987 WL 15749 (N.D. Ill. August 12, 1987) (stating that "Plaintiff's lack of specificity concerning the marketing information it alleges constitutes trade secrets is fatal to that claim" and granting summary judgment to defendant).

In this case, Covenant points at most to broad, generalized categories of information that Berry had lawful *access* to when he was President of the company alleging merely that he had had access to information including: "profit and loss information, internal costs and overhead, operational information related to San Francisco and other facilities located throughout the country, and specific bid and proposal information related to San Francisco and other airports." (Cmplt. ¶19.) The "operational information" is described as "expertise and know how" developed over the years for use at various airports. (Cmplt. ¶¶13, 15.)

These vague references to cost, overhead, or operational information are insufficient to base a federal complaint under *Carpenter, Thermal Zone,* and *Composite Marine*. In *Carpenter*, for example, Judge Pallmeyer dismissed counterclaims where the counter-plaintiff alleged disclosure of its "business and marketing plans, and billing and information systems." (Ex. 2 at p.15, ¶10). It was further alleged that the counter-defendant disclosed "confidential information" including but not limited to "information regarding PNC bank, potential business and sales opportunities with PNC Bank, the nature of Aspen's contracts and discussions" with other companies and

7

disclosed information related to the development of its product called MyJobSearchPilot. (Ex. 2 at p.18, ¶35.) Merely reciting these broad areas of information, without providing allegations about the nature of the data allegedly disclosed, was insufficient to survive a motion to dismiss. *Carpenter*, at *3.

Covenant's allegations, like those in *Carpenter*, are simply too generic to survive a motion to dismiss. If Covenant has met its Rule 11 obligations for asserting that Berry used or disclosed "confidential" or "trade secret" information then it should identify that information and be held accountable for its representations. If, as we suspect, there is no basis for the claims Mr. Berry should not have to bear the costs and expenses of discovery just to prevail on summary judgment.

The more glaring and equally fatal flaw with Covenant's allegations, however, is the failure to allege that Berry *disclosed* any of these generic categories of information. Covenant carefully claims that Berry had *access* to confidential information such as profit and loss data, cost and overhead information, and old proposals (*see* Cmplt. ¶19), but they do not allege that Berry disclosed such information to anyone. Instead, Covenant relies solely on generic labels when alleging disclosure as demonstrated below:

- "Berry has provided Covenant's <u>confidential and proprietary information</u> to AHS…" ¶25

- "Upon information and belief, Berry has … provided, or offered to provide <u>confidential and proprietary information</u> …" ¶26

- "By providing and offering to provide Covenant's <u>confidential and proprietary information</u> to competitors, Berry has breached his agreements…" (Count I, ¶30)

- "Covenant's <u>confidential and proprietary information</u> is a trade secret…" (Count II, ¶27)

8

- "Upon information and belief, Berry has disclosed Covenant's <u>confidential and proprietary information</u>..." (Count II, ¶28)

- "[B]erry [] has used and continues to use <u>Covenant's information</u>..." (Count III, ¶28).

No allegation in the Complaint answers the question: what "confidential and proprietary" information did Berry disclose? It is one thing for Berry to have had *access* to specific information while he worked at Covenant and quite another for him to have *disclosed* information in violation of a non-disclosure agreement or the Illinois Trade Secret Act. Accordingly, Berry requests that Counts I-III be dismissed.[3]

## II. Count III Should Also Be Dismissed Because It Is Preempted By The Illinois Trade Secrets Act.

Covenant alleges in Count III that Berry "has used and continues to use Covenant's information in breach of his fiduciary duty." (Cmplt. at Count III, ¶28.) The claim should be dismissed for the additional and independent reason that it is preempted by the Illinois Trade Secrets Act. 765 ILCS 1065/8(a). The Act specifically provides that it is "intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of trade secrets"). In applying this section of the Act, courts find that claims for breach of fiduciary duty based upon the purported misuse of secret information are preempted.

---

[3] It is not clear whether Covenant is relying upon its allegation Berry formed Berry Transportation Security LLC ("BTS") "with the *intention* of competing with Covenant" to support Count I. (Cmplt. ¶20). The allegation of an "intent" to compete, however, does not save the Complaint because that is not a breach of any term of the agreements at issue. None of the restrictive covenants set forth in Complaint Ex. 2, ¶5.1-5.4 are alleged to have been violated. (*See* Cmplt. ¶17.) Moreover, the general rule in Illinois is that employees may plan and even outfit a competing operation while still employed so long as they do not "commence competition." *See Delta Medical Systems v. Mid-America Medical Systems, Inc.*, 265 Ill.App.3d 777, 785 (1st Dist. 2002). The fact that Covenant has not alleged that BTS made a single sale, solicited business from Covenant's customers, solicited business from anyone, solicited Covenant's employees, made a proposal, submitted a bid or took any action in violation of the non-compete agreement speaks volumes about the viability of any potential claim.

*See Composite Marine Propellers, Inc. v. Van Der Woude*, 962 F.2d 1263, 1265 (7th Cir. 1992) (holding that the breach of fiduciary duty claim was preempted); *Carpenter*, 2011 WL 1297733 at *2 (fiduciary duty based on disclosure of confidential information preempted by Illinois Trade Secret Act).

### III. Conclusion

The case as presented to this Court should not proceed beyond the pleading stage. It would be an injustice for an individual like Mr. Berry, who is retired and 68 years old, to have to incur the costs and expenses of defending a trade secrets case against his former employer where the employer does not allege disclosure of any particular trade secret or confidential information. Berry respectfully requests that the Complaint be dismissed in its entirety, and for such additional or alternative relief as the Court deems appropriate under the circumstances.

Dated: July 22, 2013                                      Respectfully submitted,

                                                          GERALD L. BERRY

                                                    By:  /s/ Peter S. Roeser
                                                         _____

**ROESER BUCHEIT & GRAHAM LLC**
Peter S. Roeser | John E. Bucheit | Darrell J. Graham
20 N. Wacker Drive, Ste. 1330
Chicago, IL 60606
(312) 621-0303 |proeser@rbglegal.com
www.rbglegal.com
Attorney Firm No. 48008

## Certificate of Service

I, Peter S. Roeser, an attorney verify that I served a copy of the foregoing on counsel for plaintiff via the court's electronic filing system on all counsel of record on July 22, 2012.

By: /s/ Peter S. Roeser
_____

**ROESER BUCHEIT & GRAHAM LLC**
Peter S. Roeser | John E. Bucheit | Darrell J. Graham
20 N. Wacker Drive, Ste. 1330
Chicago, IL 60606
(312) 621-0303 |proeser@rbglegal.com
www.rbglegal.com
Attorney Firm No. 48008