IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| COVENANT AVIATION SECURITY, LLC, | ) ) ) | |
| Plaintiff, | ) ) | Case No: 13 C 4371 |
| v. | ) ) | Judge Joan H. Lefkow |
| GERALD L. BERRY | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Covenant Aviation Security, LLC ("Covenant") has brought suit against its former president, Gerald L. Berry, for breach of contract (Count I), misappropriation of trade secrets in violation of the Illinois Trade Secret Act, 765 Ill. Comp. Stat. 1065/1 et seq. ("the ITSA") (Count II), and breach of fiduciary duty (Count III). (Dkt. 1.) Berry moves to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. (Dkt. 10.) For the following reasons, Berry's motion to dismiss is denied.[1]

## BACKGROUND[2]

Covenant, an Illinois limited liability company, provides airport security services such as passenger, baggage and cargo screening, perimeter and access control, and other related services. It derives most of its revenue by providing these services under the Screening Partnership

---

[1] Based on the allegations in the complaint, the court concludes that it has jurisdiction under 28 U.S.C. § 1332(a)(1).

[2] The facts are taken from the allegations in the complaint and are presumed to be true for the purpose of resolving the pending motion. *See Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997).

Program ("the SPP"), which allows local airports to use private companies rather than the United States Transportation Security Agency to perform passenger and baggage screening. Covenant is one of five companies that provide services under the SPP. The largest SPP participant, San Francisco International Airport, has used Covenant for the provision of security services since 2002. The San Francisco contract is worth approximately $95 million annually and requires a large and complex baggage screening operation. Covenant has developed expertise in such operations at great effort and expense.

Berry served as Covenant's president from October 2002 until July 1, 2012. When he began working at Covenant, he entered into an executive employment agreement and signed a copy of Covenant's confidentiality and restrictive covenants policy. He signed an additional restrictive covenants policy in November 2002. The employment agreement and the policies contained non-compete, non-disclosure, non-solicit, and confidentiality provisions. During his time as president, Berry had access to Covenant's confidential and proprietary information, including profit and loss information, internal costs and overhead, operational information, and specific bid and proposal information related to the SPP contracts.

In July 2012, Berry left his position as president and entered into a consulting agreement with Covenant. Under the arrangement, he was to work as an independent contractor for Covenant "to provide consulting services to promote SPP, encourage additional airports to opt out of TSA screening and to get the airports to choose [Covenant] as their contract for Airport Screening Services . . . ." (Dkt. 1 at 5.) When Covenant learned that Berry had formed a competing company known as Berry Transportation Security, LLC, Covenant terminated Berry as independent contractor on October 11, 2012.

After the consulting relationship with Covenant ended, Berry became affiliated with American Homeland Security ("AHS") and AHS subsequently began marketing itself as an expert in airport security services. Covenant alleges on information and belief that Berry has provided Covenant's confidential and proprietary information to AHS and has offered to provide Covenant's confidential and proprietary information to other competitors to use in bidding for a new SPP contract with the San Francisco airport in September 2013. Berry has moved to dismiss the complaint in its entirety.

## LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges a complaint for failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6); *Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir. 1997). In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *Dixon* v. *Page,* 291 F.3d 485, 486 (7th Cir. 2002). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis, but must also establish that the requested relief is plausible on its face. *Ashcroft* v. *Iqbal,* 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The allegations in the complaint must be "enough to raise a right of relief above the speculative level." *Bell Atl. Corp.* v. *Twombly,* 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). At the same time, the plaintiff need not plead legal theories. *Hatmaker* v. *Mem'l Med. Ctr.,* 619 F.3d 741, 743 (7th Cir. 2010). Rather, it is the facts that count.

## ANALYSIS

Berry argues that the complaint should be dismissed in its entirety for two reasons: (1) it does not adequately identify the confidential information or trade secrets belonging to Covenant; and (2) it does not allege that Berry disclosed any such confidential information or trade secrets. (Dkt. 10 at 8.) In addition to these arguments, Berry asserts that Covenant's claim for breach of fiduciary duty should be dismissed because it is preempted by the ITSA. (*Id.* at 9-10.) The court will address Berry's arguments as they relate to each count of the complaint.

### I. Trade Secret Misappropriation

To state a claim for misappropriation of a trade secret under the ITSA, a plaintiff must show that (1) a trade secret existed, (2) the trade secret was misappropriated, and (3) the owner of the trade secret was damaged by the misappropriation. *See Liebert Corp.* v. *Mazur*, 827 N.E.2d 909, 925, 357 Ill. App. 3d 265, 293 Ill. Dec. 28 (2005); *see also Parus Holdings, Inc.* v. *Banner & Witcoff, Ltd.*, 585 F. Supp. 2d 995, 1003-05 (N.D. Ill. 2008).[3] Berry challenges the sufficiency of Covenant's complaint with respect to the first two elements.

#### A. Identification of Trade Secrets

The ITSA provides:

> "Trade secret" means information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:
>
> (1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

---

[3] Earlier Seventh Circuit opinions articulated the elements of trade secret misappropriation under the ITSA as "the information at issue was a trade secret, that it was misappropriated and that it was used in the defendant's business." *Learning Curve Toys, Inc.* v. *PlayWood Toys, Inc.,* 342 F.3d 714, 721 (7th Cir. 2003); *see also Composite Marine Propellers, Inc.* v. *Van Der Woude*, 962 F.2d 1263, 1265-66 (7th Cir. 1992). The proper formulation is not dispositive in this case.

> (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

765 Ill. Comp. Stat. 1065/2(d). "The existence of a trade secret ordinarily is a question of fact . . . best resolved by a fact finder after full presentation of evidence from each side." *Learning Curve Toys, Inc.* v. *PlayWood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003) (citations and internal quotations omitted). While "[i]t is not enough to point to broad areas of technology and assert that something there must have been secret and misappropriated," *Composite Marine Propellers, Inc.* v. *Van Der Woude*, 962 F.2d 1263, 1266 (7th Cir. 1992), trade secrets "need not be disclosed in detail in a complaint alleging misappropriation for the simple reason that such a requirement would result in public disclosure of the purported trade secrets." *AutoMed Techs., Inc.* v. *Eller,* 160 F. Supp. 2d 915, 921 (N.D. Ill. 2001) (quoting *Leucadia, Inc.* v. *Applied Extrusion Techs., Inc.,* 755 F. Supp. 635, 636 (D. Del. 1991)).

Whether a plaintiff adequately alleges the existence of a trade secret is a fact intensive analysis, but courts have found allegations to be adequate in instances where the information and the efforts to maintain its confidentiality are described in general terms. *See, e.g., GoHealth, LLC* v. *Simpson*, No. 13 C 2334, 2013 WL 6183024, at *12 (N.D. Ill. Nov. 26, 2013) (identification of trade secret as processes, systems, and technology that allowed call center to respond quickly adequate to state a claim); *Papa John's Int'l* v. *Rezko*, 446 F. Supp. 2d 801, 812 (N.D. Ill. 2006) (claim can proceed although it is "unclear which trade secrets of the 'Papa John's System' were misappropriated"); *see also Fire 'Em Up, Inc.* v. *Technocarb Equip.(2004) Ltd.*, 799 F. Supp. 2d 846, 850 (N.D. Ill. 2011); *Labor Ready, Inc.* v. *Williams Staffing, LLC*, 149 F. Supp. 2d 398, 412 (N.D. Ill. 2001).

Berry cites two cases in which courts dismissed complaints for failure to sufficiently plead the existence of a trade secret. In *Carpenter* v. *Aspen Search Advisors LLC*, No. 10 C

5

6823, 2011 WL 1297733 (N.D. Ill. Apr. 5, 2011), the court dismissed a counterclaim for misappropriation of the defendant recruiting agency's "business model, strategies, ideas and processes." *Id.* at *3. The court found that it was not enough to "point to broad areas of [information] . . . and assert that something there must have been secret." *Id.* (quoting *Composite Marine*, 962 F.2d at 1266). In *Thermal Zone Products Corp.* v. *Echo Engineering, Ltd.*, No. 93 C 0556, 1993 WL 358148 (N.D. Ill. Sept. 14, 1993), the court found that allegations that plans and specifications for ovens are trade secrets were not sufficient to survive a motion to dismiss without allegations that the information was unique and protected. *Id.* at *5.

The cases cited by Berry can be distinguished from the case at hand. Covenant points to specific types of business information and specific efforts it has taken efforts to protect the business information. Covenant alleges that its confidential and proprietary information includes "profit and loss information, internal costs and overhead, operational information as related to San Francisco and other facilities throughout the country, and specific bid and proposal information related to San Francisco and other airports." (Dkt. 1 at 7, 10.) This type of information has economic value. *Cf. SKF USA, Inc.* v. *Bjerkness*, 636 F. Supp. 2d 696, 711 (N.D. Ill. 2009) ("[K]nowing the prices offered by competitor to a specific customer for a specific set of services certainly would enable a competitor to make a more attractive bid in an attempt to displace the current provider."). Covenant also alleges that it has taken steps to ensure that its proprietary and confidential information remains secret. (*See id.* at 3 ("Covenant treats this information as highly confidential and takes reasonable precautions to protect it from unauthorized disclosure."); *id.* at 4-5 (excerpting provisions from Confidentiality and Restrictive Covenants Polices).) These allegations identify the trade secrets at issue with sufficient specificity.

6

### B. Misappropriation of Trade Secrets

"Misappropriation can be shown one of three ways—by improper acquisition, unauthorized disclosure, or unauthorized use." *Liebert*, 827 N.E.2d at 925. In this case, Covenant alleges that Berry improperly disclosed the trade secrets to AHS and others and is using the information to compete unfairly with Covenant. (Dkt. 1 at 11.) The fact that Covenant's allegations rest on information and belief is not reason to dismiss the complaint. *See, e.g., Brown* v. *Budz*, 398 F.3d 904, 914 (7th Cir. 2005) ("Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading on 'information and belief' should be liberally viewed.") (internal quotation omitted).

In similar circumstances, courts have allowed complaints to survive based on the "inevitable disclosure" doctrine. *See AutoMed*, 160 F. Supp. 2d at 921; *PepsiCo, Inc.* v. *Redmond*, 54 F.3d 1262, 1269 (7th Cir. 1995). The inevitable disclosure doctrine allows courts to infer a defendant's use of trade secrets "based on a defendant's prior positions with plaintiff, the information to which they had access and the nature of their work for their new employer." *AutoMed*, 160 F. Supp. 2d at 921. "To invoke this doctrine the complaint must do more than make conclusory allegations that the employees will necessarily use trade secrets in their new position." *Id*.

Covenant has made sufficient allegations to satisfy the inevitable disclosure doctrine. It alleges that as president Berry had access to Covenant's confidential and proprietary information and after Berry became affiliated with AHS, AHS began offering "expertise in a SPP and other airport security services." (Dkt. 1 at 9.) In addition, Covenant alleges that "Berry has communicated directly with one or more other competitors of Covenant . . . and has provided, or offered to provide, confidential and proprietary information that would be useful in competing

for the forthcoming rebid of the SPP contract for San Francisco and for various security services at other airports." (*Id.*) Covenant's allegations of unauthorized disclosure and use are adequate to plead misappropriation.

Covenant's complaint sufficiently alleges the elements of trade secret misappropriation under the ITSA, and Berry's motion is denied with respect to this count.

### II. Breach of Contract

To state a breach of contract claim under Illinois law, Covenant must allege (1) the existence of a valid and enforceable contract; (2) the plaintiff's performance of the contract; (3) the defendant's breach of the contract; and (4) resulting injury.[4] *See Nat'l Tech., Inc.* v. *Repcentric Solutions*, No. 13 C 1819, 2013 WL 6671796, at *2 (N.D. Ill. Dec. 18, 2013) (quoting *Sherman* v. *Ryan*, 911 N.E.2d 378, 397, 392 Ill. App. 3d 712, 331 Ill. Dec. 557 (2009)). As with the claim for misappropriation of trade secrets, Berry argues that the claim for breach of contract should be dismissed because the complaint does not identify any specific confidential information that he has disclosed. Without such specification, Berry argues that Covenant has not alleged a breach of contract.[5]

As discussed above, Covenant's complaint states that as president Berry had access to profit and loss information, internal costs and overhead, operational information, and specific bid and proposal information, and he disclosed information in breach of his contracts with Covenant to AHS and other competitors in order to compete with Covenant for SPP contracts. These allegations are adequate to support a breach of contract claim. *See, e.g., Aspen Mktg. Servs., Inc.*

---

[4] Illinois law governs both the employment agreement and consulting agreement between Berry and Covenant.

[5] Berry does not argue that the agreements he entered into with Covenant are unenforceable or dispute that they contain provisions that would be breached by his disclosure of confidential and proprietary information.

8

v. *Russell*, No. 09 C 2864, 2009 WL 4674061, at *5 (N.D. Ill. Dec. 3, 2009) (allowing breach of contract claim to survive based on alleged use of secret or confidential information). Berry's motion to dismiss Covenant's breach of contract claim is denied.

**II. Breach of Fiduciary Duty**

To state a claim for breach of fiduciary duty under Illinois law, a plaintiff must plead (1) the existence of a fiduciary duty, (2) breach of that duty, and (3) damages to the plaintiff as a result of that breach. *Lumenate Techs., LP* v. *Integrated Data Storage, LLC*, No. 13 C 3767, 2013 WL 5974731, at *8 (citing *Neade* v. *Portes*, 739 N.E.2d 496, 502, 193 Ill. 2d 433, 250 Ill. Dec. 733 (2000)). An officer's use of confidential business information to engage in a new business after his departure is a breach of his fiduciary duty. *See Preferred Meal Sys.* v. *Guse*, 557 N.E.2d 506, 515, 199 Ill. App. 3d 710, 145 Ill. Dec. 736 (1990) (citing *Affiliated Hosp. Prods.*, *Inc.* v. *Baldwin*, 373 N.E.2d 1000, 1006, 57 Ill. App. 3d 800, 15 Ill. Dec. 528 (1978)); *see also Jostens, Inc.* v. *Kauffman*, 842 F. Supp. 352, 354 (C.D. Ill. 1994) ("[R]estrictive convenants may give rise to a fiduciary duty in ex-employees.").

Berry does not challenge the sufficiency of Covenant's complaint with respect to the elements of breach of fiduciary duty. Instead, he argues that the ITSA preempts Covenant's claim because it is "intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for misappropriation of a trade secret." 765 Ill. Comp. Stat. 1065/8(a). Covenant correctly responds that the ITSA claim only preempts if the confidential information at issue constitutes trade secrets. *See Hecny Transp., Inc.* v. *Chu*, 430 F.3d 402, 404-05 (7th Cir. 2005) ("The dominant view is that claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets.") Although Covenant cannot protect confidential information to the extent that it would prevent employees from working after

9

they leave the company, *Delta Med. Sys.* v. *Mid-Am. Med. Sys., Inc.,* 772 N.E.2d 768, 793, 331 Ill. App. 3d 777, 265 Ill. Dec. 397 (2002), it is possible for the court to protect more than what is defined as trade secrets.

The complaint does not restrict the breach of fiduciary claim to trade secrets. It states that Berry "has used and continues to use Covenant's *information* in breach of [his fiduciary] duty." (*Id.* at 11-12 (emphasis added).) The court cannot determine at this point whether Covenant's breach of fiduciary duty claim only relates to trade secrets. Thus, Berry's motion to dismiss the breach of fiduciary duty claim based on preemption is denied.

## **CONCLUSION**

For the foregoing reasons, Berry's motion to dismiss is denied on all counts.

Date: February 11, 2014

_____
U.S. District Judge Joan H. Lefkow